UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

STEVEN RICHARDS,

                      Petitioner

-vs-

JOHN BEAVER, SUPERINTENDENT,

                      Respondent.

DECISION AND ORDER

02-CV-6052 CJS

_____

APPEARANCES

For the Petitioner:        Bruce F. Freeman, Esq.
                                 36 West Main Street
                                 Rochester, New York 14614

For the Respondent:      Loretta S. Courtney, Esq.
                                 Assistant District Attorney
                                 Office of the Monroe County District Attorney
                                 Ebenezer Watts Bld., Suite 832
                                 Rochester, New York 14614

INTRODUCTION

Steven Richards ("Petitioner") was convicted after a jury trial in Monroe County Court, State of New York, of Criminal Sale of a Controlled Substance in the Second Degree, Criminal Possession of a Controlled Substance in the Third Degree (three counts), and Criminal Sale of a Controlled Substance in the Third Degree (three counts). Petitioner now seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, vacating those convictions. For the reasons that follow, the application is denied and this action is dismissed.

1

BACKGROUND

Petitioner was videotaped participating in four separate sales of cocaine to an undercover police officer, between March 2, 1995 and March 24, 1995. On each of these occasions, Officer Sanford ("Sanford"), the undercover officer, approached petitioner about purchasing a quantity of cocaine. Petitioner would then notify a third party cocaine supplier, who would come to the vicinity of the transaction and remain in his car. Petitioner would take Sanford's money to the supplier's car, pay for the cocaine, and then bring the cocaine to Sanford. On each occasion, Sanford would pay petitioner between $5 and $20 for facilitating the sale.

On March 29, 1995, four plain-clothes police officers, including Sanford, approached petitioner on the street near his home. Petitioner appeared startled, and the officers identified themselves as police officers and told petitioner that "everything would be all right."[1] The officers then told petitioner that they were taking him to the Sheriff's Department to "talk about the incidents that had taken place over the last month." Petitioner said that he was willing to talk with the officers at the Sheriff's department. The officers patted down petitioner, handcuffed him, and placed him in a police car.[2] Sanford and another officer drove petitioner to the Sheriff's Office. While driving, Sanford again stated that the officers "wanted to discuss the events of the previous month,"[3] and petitioner again said that he would talk with the officers.

---

[1] Trial transcript at 363.

[2] Transcript of November 16, 1996 hearing at 39; Trial transcript at 284. Although Officer Sanford testified at the earlier hearing that he did not recall whether or not petitioner was handcuffed, Officer Searchfield testified at trial that petitioner was handcuffed. Hearing transcript at 39.

[3] Petitioner's Memo of Law [#2] p. 9.

2

At the Sheriff's Office, Sanford placed petitioner in an interrogation room. Before interviewing petitioner, Sanford gave petitioner his *Miranda* warnings, and petitioner agreed to waive his rights. Sanford then interviewed petitioner for approximately one hour, and typed up a two-page written statement, which petitioner signed in the presence of Sanford and another officer. In the written statement, petitioner admitted participating in the four sales of cocaine.[4] After petitioner gave the statement, Sanford asked him if he was interested in making a cooperation agreement with the District Attorney. Sanford also told petitioner that he would notify the District Attorney of petitioner's cooperation. However, Sanford did not make any promises in that regard.[5]

Petitioner later moved to suppress the statement. Following a *Huntley* hearing, the trial Judge, the Honorable Patricia D. Marks, County Court Judge, found that the prosecution had proven beyond a reasonable doubt that petitioner's statement was voluntarily given:

> The people have proven beyond a reasonable doubt the voluntariness of the statement, that the Defendant was read his *Miranda* warnings, that there was no force used, that the Defendant was not under the influence of alcohol or drugs at the time that he responded appropriately to questions, he understood his rights and agreed to give up his rights. At no time during the course of the questioning did the Defendant assert any of his constitutional rights.

Hearing transcript at 64; *see also Id*. at 61-65.

After a jury trial, at which his statement was introduced into evidence, petitioner was convicted of all counts of the indictment. Petitioner was sentenced, as a second

---

[4] Trial transcript at 372-75.

[5] Hearing transcript at 54-56, 63; Trial transcript at 435.

felony offender, to ten years to life on the top count of the indictment and ten-to-twenty years on the remaining counts, with all sentences to run concurrently. The New York State Supreme Court, Appellate Division, Fourth Department, affirmed petitioner's conviction on September 29, 2000. *People v. Richards*, 275 A.D.2d 886, 713 N.Y.S.2d 604 (4th Dept. 2000). The New York State Court of Appeals denied petitioner leave to appeal by certificate dated January 30, 2001. *People v. Richards*, 96 N.Y.2d 738, 722 N.Y.S.2d 805 (2001).

Petitioner then filed the subject petition for habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner contends that the police officers' pre-*Miranda* warning conversations with him rendered his post-*Miranda* warning statement involuntary. Specifically, petitioner's claim is as follows:

> The police solicited two 'waivers' of [Petitioner's] right to remain silent and two agreements by [Petitioner] to provide a statement before reading the *Miranda* rights to him. The solicitation of the pre-*Miranda* 'waivers' and agreements violated the strict procedural requirements of *Miranda v. Arizona*, rendered the subsequent 'post-*Miranda*' waiver a nullity . . . .
> \*\*\*
> The police used deception to procure the pre-*Miranda* 'waivers' and agreements. The deception, the limited education of the petitioner, and pre-*Miranda* promises of leniency, in combination with the violation of the strict *Miranda* rules, rendered the post-*Miranda* statement involuntary and the use of the statement at trial violated petitioner's right to due process of law.

Petition [#1] ¶ 12. The two "waivers" to which petitioner refers are the two instances, once on the street and once in the police car, in which petitioner agreed to talk with the police about "the events of the previous month" at the Sheriff's Office. As far as the alleged deception, petitioner contends that the officers misled him into believing that he was not under arrest, by telling him that "everything would be all right," by failing to

handcuff him, and by failing tell him that he as under arrest.  Petitioner, who was 37 years old at the time of the events at issue, also contends that his statement was involuntary because of his eighth-grade education and history of cocaine addiction.

## ANALYSIS

<u>Standard of Review</u>

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996,("AEDPA"),

> a federal court cannot grant a writ of habeas corpus unless the state court's proceedings (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U .S.C. § 2254(d)(1), or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id*. § 2254(d)(2).

*Davis v. Greiner*, — F.3d — , 2005 WL 2500690 at *5 (2nd Cir. 2005).  In this regard,

> [a] decision is contrary to clearly established Federal law if it contradicts the governing law or if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from the Supreme Court.  An unreasonable application of federal law is more than an incorrect application, but the petitioner need not show that all reasonable jurists would agree that a state court determination is incorrect in order for it to be unreasonable.  Instead, a federal court should review a state court's interpretation of federal law using a standard of objective reasonableness.  The increment of incorrectness beyond error need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.

*Yung v. Walker*, 341 F.3d 104, 109 -10 (2d Cir. 2003).  Moreover,

> [i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C.A. § 2254(e)(1).

### Miranda

It is well settled that "[a] suspect is entitled to *Miranda* warnings only if he or she is interrogated while in custody." *Parsad v. Greiner*, 337 F.3d 175, 181 (2d Cir. 2003) (citation and internal quotation marks omitted), *cert. den.* 540 US. 1091 (2003). However, where, in response to pre-*Miranda* warning questioning, a defendant makes inculpatory statements, his subsequent post-*Miranda* warning statements are not necessarily inadmissible. In *Parsad v. Greiner*, the Second Circuit wrote:

> Although we assume that petitioner made his initial inculpatory statements while in custody, and in the absence of *Miranda* warnings, petitioner's subsequent inculpatory statements, which occurred after the detectives advised him of his *Miranda* rights, are not necessarily inadmissible as "fruit" of the original *Miranda* violation. In *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the Supreme Court held that "absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion" with respect to subsequent statements that the suspect makes after receiving Miranda warnings. *Id*. at 314, 105 S.Ct. 1285. Rather, "the admissibility of any subsequent statement should turn in these circumstances solely on whether it [was] knowingly and voluntarily made." *Id*. at 309, 105 S.Ct. 1285. Therefore, we must consider whether the circumstances surrounding petitioner's unwarned confession were so coercive as to prevent him from making a subsequent knowing and voluntary waiver of his rights, thereby requiring the suppression of his post-*Miranda* confession. *See id*. at 309-14, 105 S.Ct. 1285; *see also Tankleff* [*v. Senkowski*, 135 F.3d 235, 244 (2d Cir. 1998)]. While all custodial interrogations inherently involve "serious pressures," *id*., in determining the voluntariness of petitioner's post-*Miranda* confessions, we must examine the totality of the circumstances. *See Tankleff*, 135 F.3d at 245. Specifically, these circumstances include 1) the accused's characteristics, 2) the conditions of the interrogation, and 3) the conduct of the police. *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir.1991).

*Parsad v. Greiner*, 337 F.3d at 183.

In the instant case, petitioner contends that the police officers' pre-*Miranda* warning conversations with him rendered his post-*Miranda* warning statement involuntary. The Court disagrees, and finds that petitioner's post-*Miranda* statements were voluntary and were not the result of intentional police coercion or improper tactics. At the outset, it is undisputed that petitioner was in custody at all relevant times. Next, the Court finds that petitioner's pre-*Miranda* warning statements were not the result of "deliberately coercive or improper [police] tactics." Petitioner contends that, prior to going in the police car, the officers initially "tricked" him into agreeing to talk with them by telling him that "everything was all right." In this same regard, petitioner contends that the officers intended to trick him by failing to tell him that he was under arrest and by failing to place him in handcuffs. However, the record indicates that the officers told petitioner that "everything was all right" only because petitioner appeared startled at being approached by the four plain-clothes officers. It is not reasonable to think, as petitioner suggests, that the officers were attempting to mislead him into believing that he had nothing to worry about in terms of potential criminal liability. On the contrary, petitioner knew that he had plenty to worry about, since he surely recognized Officer Sanford as the "buyer" to whom he had just made four sales of cocaine. As for petitioner's claim that the officers attempted to mislead him by not handcuffing him, that claim is refuted by Officer Searchfield's trial testimony, in which he stated that petitioner was handcuffed. Nor does the Court believe that Sanford did anything improper by discussing the possibility of leniency with petitioner. In this regard, the Court notes, first, that Sanford had already given petitioner his *Miranda* warnings when the topic of

cooperation was discussed. In any event, Sanford did not make any promises to petitioner, but rather, he merely stated that he would bring petitioner's cooperation to the attention of the district attorney.

Moreover, the totality of the circumstances in this case establishes that petitioner's post-*Miranda* statement was voluntary. As for petitioner's personal characteristics, he contends that he was incapable of making an informed decision because he had an 8th grade education and was a cocaine addict. However, there is nothing to suggest that petitioner was incapable of understanding the consequences of his actions because of his education level, nor is there any indication that he was under the influence of drugs or alcohol at the relevant time. *Parsad v. Greiner*, 337 F.3d at 184 ("The mere fact that petitioner is an alcoholic is insufficient to render his pre-*Miranda* statements involuntary."). As for the conditions of the interrogation, petitioner was not threatened or mistreated in any way.

The Court emphasizes that the prosecution did not introduce at trial anything that petitioner said *prior* to being given his *Miranda* warnings. More importantly, petitioner did not make any "inculpatory" statements prior to being given his *Miranda* warnings. Rather, he merely stated that he would talk with the officers about "the events of the previous month." Consequently, petitioner's pre-*Miranda* warning statements did not "let the cat out of the bag" as far as anything that he said in his post-*Miranda* statement.

## CONCLUSION

Petitioner's application for a writ of habeas corpus is denied, and the petition is dismissed. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any

appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

    So Ordered.

Dated: Rochester, New York
      October 26, 2005

                                      ENTER:

                                      /s/ Charles J. Siragusa
                                      CHARLES J. SIRAGUSA
                                      United States District Judge